## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEAN MICHAEL DAVIS, | ) | |
| ID # 1400199, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:12-CV-0109-M (BH) |
| | ) | |
| RICK THALER, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction in Cause No. F06-64908 should be **DENIED** with prejudice, and his challenge to his conviction in Cause No. F06-64909 should be **DISMISSED** for lack of subject matter jurisdiction.

## I.  BACKGROUND

Petitioner challenges his convictions for possession of methamphetamine and for possession of marijuana in causes F06-64908 and F06-64909. Respondent is Rick Thaler, Director of TDCJ-CID.

### A.  Factual and Procedural History

On June 8, 2006, the State indicted obtained two indictments against petitioner for possession with intent to deliver methamphetamine and for possession of marijuana on or about April 19, 2006. (Clerk's Record ("C.R."):2).[1] He pleaded not guilty and was tried before a judge in Dallas County on October 13, 2006. (C.R.:4). The state appellate court recounted the evidence presented at trial

---

[1] There are separate clerk's records for petitioner's cases, but the relevant pages are the same in each record.

as follows:

On April 19, 2006, five police officers went to a house to investigate a complaint of drugs being sold there.  As Officer Daniel Foster stood on the porch about to knock on the door, he looked through a window in the door and saw in the living room a coffee table that had a crack pipe and what appeared to be methamphetamine sitting on it.  The officers knocked on the door, and a young woman opened the door.  Through the open door, Officer Mark Villareal saw appellant leave the back bedroom and come to the door.  The officers asked the owner of the house, Rebecca Jackson, for permission to search the house, and she signed a written form giving her consent to search the house for drugs.  The officers found methamphetamine under the sink in the bathroom next to the back bedroom.  In the back bedroom, they found marijuana in plain view on the floor and a scale and packaging materials.  It appeared to the officers that someone was packaging the marijuana when they arrived.  The officers found two firearms in the closet of the back bedroom.  The officers found appellant's clothing and briefcase in the house.  When the officers mentioned they might look for fingerprints on the bags containing the marijuana, appellant told the officers his fingerprints might be on some of the bags as he had moved them.  Jackson told the officers appellant was staying at the house as a guest.  The officers testified appellant told them he did not live there but he received mail there.  The officers also testified Jackson told them "she'd overheard [appellant] talking on the phone about he was out of money because he had spent it all on marijuana or something to the effect."

Appellant testified he was released from jail on March 6, 2006, following his arrest for the other drug offenses.  Appellant had all his possessions in his car.  At the end of March, appellant's "ex" used a spare key to take appellant's car, which still contained all of appellant's possessions.  On April 18, appellant's "ex" left the car and appellant's possessions at Jackson's house.  Jackson contacted appellant and told him she had his car and possessions.  On April 19, appellant went to Jackson's house to pick up his possessions, some of which were in the house.  When appellant walked through the living room, there were no drugs on the coffee table.  Appellant was gathering his possessions that were in the front bedroom when he realized he needed a box and there was a box outside.  As appellant went out the front door, the officers grabbed his arm, led him to the sofa in the living room, and required him to stay on the sofa while the officers searched the house.  He testified he did not hear the officers

2

knock and that the officers made up the testimony about him coming from the back bedroom of the house.  Appellant testified, "I never went in the back bedroom"; however, he also testified, "I had clothes in the back bedroom."

When appellant was asked about his statement that his fingerprints might be on the bags containing the marijuana, he testified that the officers misinterpreted his statement.  According to appellant's testimony, what he meant was that he had moved a box of plastic bags in the kitchen.  He testified he did not tell the officers he had touched any bags containing marijuana.  Later, appellant testified he never told the officers his fingerprints might be "on stuff" and that the police had made that up.

*Davis*, 323 S.W.3d at 194-95.

The trial court found petitioner guilty of both charges and sentenced him to fifteen years and two years, respectively. (R. 1:125-26).  It also made the affirmative finding that petitioner used or exhibited a deadly weapon in the commission of these offense.  (R. 1:124).  On that same date, the trial court adjudicated petitioner guilty in six previous drug cases in which he had received deferred adjudication and sentenced him to ten years in two of the cases and fifteen years in the other four. *Davis v. State*, 323 S.W.3d 190, 192 (Tex. App.–Dallas, 2008, pet. ref'd).

On direct appeal, petitioner alleged that the evidence was legally and factually insufficient to support his convictions for possession of methamphetamine and marijuana, that the sentences he received were cruel and unusual punishment, that the trial court erred in entering deadly weapon findings in the cases because he did not receive adequate notice, and that the evidence was insufficient to support the deadly weapon findings. *Id.* at 193, 195-97. Petitioner's convictions were affirmed on direct appeal, and his petitions for discretionary review (PDR) were refused on September 10, 2008.  *See* PD-0451-08 and PD-0452-09.  Petitioner filed an  initial state habeas application challenging his conviction for possession of marijuana that was dismissed because his

direct appeal was still pending. *See Ex parte Davis*, WR-69,671-01 (Tex. Crim. App. July 11, 2007). He then filed subsequent state writs challenging both convictions on August 26, 2009, in which he raised the same ground he raises in his federal petition. (State Habeas Transcript "S.H.Tr."[WR-67,691-02] at 2; S.H.Tr.[WR-67,691-03] at 2-21). The Court of Criminal Appeals denied his writ challenging his conviction for possession of methamphetamine without a written order based on the trial court's findings on September 7, 2011. *See Ex parte Davis*, WR-69,671-02 (Tex. Crim. App. Sept. 7, 2011). His state writ challenging his conviction for possession of marijuana was dismissed by the Court of Criminal Appeals on that same date because the sentence had been discharged. *See Ex parte Davis*, WR-69,671-03 (Tex. Crim. App. Sept. 7, 2011).

**B.  Substantive Claims**

On December 16, 2011, petitioner mailed his petition for federal habeas relief raising the following grounds for relief:

(1) the trial court was without jurisdiction to include a deadly weapon finding in the judgment because the result was that petitioner was convicted of a more serious offense than the one for which he was indicted (ground one);

(2) the Texas practice of permitting the trial court to add an affirmative deadly weapon finding violates petitioner's constitutional rights (ground two);

(3) the prosecution committed misconduct by knowingly using false testimony (ground four);

(4) his trial attorney rendered ineffective assistance of counsel by failing to:

–investigate the crime scene;

–object to the trial court's lack of jurisdiction;

–object to the unconstitutional use of article 42.12 of the Texas Code of Criminal Procedure;

–object to the deadly weapon finding;

4

–properly cross-examine witnesses;

–preserve errors for direct appeal; and

–investigate, interview, and subpoena witnesses (ground three); and

(5)  his appellate attorney rendered ineffective assistance of counsel by failing to raise and properly argue the grounds petitioner raises in his federal petition on direct appeal (ground five).

(Mem. at 1-2, 14, 33).  Respondent filed a response on April 17, 2012, and provided the state court records.  Petitioner did not file a reply brief.

## II. JURISDICTION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  They have "a continuing obligation to examine the basis for jurisdiction."  *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).

Federal district courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The "in custody" requirement is a jurisdictional prerequisite, and a petitioner must be in custody at the time the petition is filed.  *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Generally, one satisfies the "in custody" requirement, when the challenged conviction has not fully expired at the time the petitioner files a petition under § 2254.  *See Carafas v. Lavallee*, 391 U.S. 234, 238 (1968).  While actual physical detention is not required to meet this custody

5

requirement, there must be some restraint on the liberty of a person. *Jones v. Cunningham*, 371 U.S. 236 (1963). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng*, 490 U.S. at 492. Petitioner has not disputed that his sentence for possession of marijuana has been discharged, and the Court of Criminal Appeals dismissed his state writ in that case for that reason. This Court lacks jurisdiction to consider the merits of petitioner's federal habeas petition challenging his conviction in Cause No. F06-64909, and his habeas challenge to this conviction should be dismissed on that basis.

### III. STATUTE OF LIMITATIONS

Respondent asserts that petitioner's federal petition is barred by the one-year statute of limitations. Under 28 U.S.C. § 2244(d)(1), this one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition or any new constitutional right under subparagraph (C). The one-year statute of limitations is therefore calculated from the latest of (A) the date petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise

of due diligence the facts supporting his claims.  Because he did not file a petition for writ of certiorari with the Supreme Court, petitioner's state conviction for possession of methamphetamine became final for purposes of § 2244(d) on December 9, 2008, when the ninety-day time frame for seeking further review after the Texas Court of Criminal Appeals refused the PDR ended.  *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and noting that the Supreme Court allows ninety days for filing a petition for certiorari following the entry of judgment); Sup. Ct. R. 13.3.  Petitioner knew or should have known about the basis for the claims he raises prior this date, so the AEDPA one-year time period for filing a federal petition began on December 10, 2008.

When petitioner filed his state application on August 26, 2009, 260 days had elapsed on this one-year deadline.  The one-year limitations period was then tolled while petitioner's state habeas application was pending before the Texas state courts, until it was denied on September 7, 2011.  28 U.S.C. § 2244(d)(2); *see also Henderson* v. *Johnson*, 1 F.Supp.2d 650, 652 (N.D. Tex. 1998) (holding that the filing of a state habeas application stops the one-year period until ruling on state application).  Petitioner declared under penalty of perjury that he placed his federal petition in the prison mailing system on December 16, 2011, 100 days later.  Based on this date, his federal petition is timely.  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

Respondent asserts, however, that petitioner's sworn declaration regarding the date he placed the petition in the prison mail system is not credible because the date stamp on the envelope reflects that the petition was not mailed by the prison until January 9, 2012.  Respondent provides no

evidence contradicting petitioner's sworn declaration that he placed his petition in the prison mail system on December 16, 2011.  A delay between the date a petitioners tenders filings to prison authorities and the date that the prison authorities actually mail the filing is not uncommon.  In fact, a prisoner's lack of control over the mailing or filing of his papers is the rationale for the prison mail box rule.  *See Houston v. Lack*, 487 U.S. 266, 271 (1988).  Nor is the difference of approximately three weeks between petitioner's sworn delivery date and the postmark date incredible given the intervening Christmas and New Year's Day holidays.  The Court finds that petitioner's petition was filed on December 16, 2012, and it is therefore timely.

## IV.  AEDPA STANDARD

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court pro-ceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unrea-sonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determin-ation of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The state court's resolution of factual issues is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

9

## V. DEADLY WEAPON FINDING

In his first ground for relief, petitioner asserts that the trial judge did not have jurisdiction to make a deadly weapon finding at the sentencing phase of his trial because the finding had the effect of convicting him of a more serious offense than the one for which he was indicted. (Mem. at 1, 3). In his second ground, petitioner challenges Article 42.12 § 3g(2)(a) of the Texas Code of Criminal Procedure, which concerns deadly weapon affirmative findings, as unconstitutional because it mandates that defendants be convicted of more serious offenses than the ones for which they were indicted. (Mem. at 5-6).

Petitioner essentially complains that the indictment did not allege that he had used or exhibited a deadly weapon; because the trial court made this affirmative finding, he is not eligible for parole until he has served one-half of his sentence. *See* TEX. GOV'T CODE ANN. § 508.145(d)(1) (West 2005). "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Under Texas state law, the State is not required to plead the use of a deadly weapon in an indictment because a deadly weapon finding changes the character, rather than the degree of punishment. *Ex parte Patterson*, 740 S.W.2d 766, 775-76 (Tex. Crim. App. 1987), *overruled on*

*other grounds*, 769 S.W.2d 938 (Tex. Crim. App. 1989). State law therefore permits the State to give notice of its intent to seek a deadly weapon by way of a special plea so long as the defendant receives notice of this intent. *Id.* Here, the State gave petitioner notice that it intended to seek a deadly weapon finding on June 27, 2006, almost four months before his trial. (C.R.:5). The state habeas court found that a deadly weapon affirmative finding does not increase the level of the offense or the sentence given; it affects parole eligibility. (S.H.Tr.:276).

A criminal defendant does have a due process right to notice of the charges against him so that he can prepare a trial defense. *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996), *citing Cole v. Arkansas*, 333 U.S. 196, 201 (1948). To a lesser degree, he also has a due process right to notice of sentencing issues, such as an intent to seek a deadly weapon finding. *Id.* at 593-94. Because he received notice of the State's intent to seek a deadly weapon finding, petitioner's constitutional rights were not violated. The state habeas court's denial of petitioner's claims that the trial court lacked jurisdiction to enter the affirmative finding or that the relevant Texas statute is unconstitutional was not contrary to federal law. Petitioner's first and second grounds are without merit.

## VI. PROSECUTORIAL MISCONDUCT

In his fourth ground for relief, petitioner asserts that the prosecution knowingly used false testimony from the two police officers who testified at trial that they viewed petitioner exiting the back bedroom where drugs were later discovered. He claims that this testimony is contradicted by a diagram of the house and an investigator's affidavit stating that the back bedroom is not visible from the front door. (Mem. at 31-2).

The Supreme Court has held that the presentation of false evidence at trial, as well as the

admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material. *Napue v. Illinois*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

At petitioner's trial, Officer Daniel Foster testified that he was able to look through the window in the front door of the house where petitioner was arrested, that he first saw methamphetamine on a coffee table, and after the officers knocked on the door, he saw petitioner exit from the back corner of the house where a bedroom was located. (R. 1:27, 30-1, 42). Foster acknowledged that he did not see petitioner actually exit the bedroom, but that he was walking down a hall from where the back bedroom and back bathroom were located. (R. 1:43). Officer Mark Villareal testified that after a female resident opened the front door to the house, he saw petitioner come towards the door from the open door of the back bedroom. (R. 1:53-4, 64).

At the state habeas level, the prosecuting attorney submitted a sworn affidavit stating that to her knowledge, the testimony given by Foster and Villareal was true and correct, and that she had no actual nor imputed knowledge of perjury committed at petitioner's trial. (S.H.Tr.:270). Petitioner submitted an affidavit from a defense investigator, who stated that he looked through the window of the house and could not see any of the bedrooms, and a diagram of the house.

(S.H.Tr.:233-34).  The state habeas court found the prosecutor's affidavit to be credible and found no evidence to support the claim that the State presented false testimony at trial.

The state court's denial of this claim is not contrary to federal law.  Petitioner has failed to establish either that the officers' testimony at trial was false or that the prosecution knew it was false.  The officers' testimony is not contradicted by the defense investigator's affidavit.  Even if there had been a conflict, this does not establish that the testimony was perjured.  *See Koch v. Puckett*, 907 F.2d 524, 531 (1990).  This ground is therefore without merit.

## VII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third ground for relief, petitioner asserts that his trial counsel provided ineffective assistance of counsel by failing to: 1) investigate the crime scene and investigate, interview, and subpoena witnesses; 2) properly cross-examine witnesses; 3) object to the trial court's lack of jurisdiction to enter a deadly weapon finding, the constitutionality of state law permitting deadly weapon findings, and the deadly weapon finding itself; and 4) preserve error for direct appeal. (Mem. at 14).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that

counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address

the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong pre-

sumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*,

466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influ-

enced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a petitioner

must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a probability suffi-

cient to undermine confidence in the outcome."  *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393

n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the

trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality

of the evidence before the finder of fact in assessing whether the result would likely have been

different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

A.      **Failure to Investigate and Cross-Examine**

Petitioner asserts that his trial counsel was ineffective for failing to investigate the crime

scene or to investigate, interview, and subpoena witnesses to testify in his defense.   He claims that

if trial counsel had visited the crime scene, he would have learned that it was impossible for the

officers to see the back bedroom through the front door window or from the threshold of the front

door.   Petitioner claims counsel should have presented this evidence at trial, through either a

videotape or the testimony of an investigator, the tenant, or the owner of the house, as well as

testimony from a friend who stored petitioner's belongings at another residence and from the tenant

of the house regarding petitioner's lack of knowledge of the drugs and firearms. (Mem. at 15-17, 28-

29).   He also claims counsel did not properly cross-examine the police officers on this issue.   *Id.* at

23-25.   Petitioner contends that there is a reasonable probability that he would no have been

convicted because there would have been no connection between him and the drugs and firearms

without this testimony from the officers.   *Id.* at 18-19.

Petitioner's trial counsel submitted an affidavit at the state habeas level.   It stated that he did

not visit the crime scene, but he discussed the layout of the home with petitioner.   Based on these

discussions, he had a clear understanding of where the offense occurred and where petitioner was

observed.   The affidavit also stated that he recalled speaking to two potential witnesses who were

present at the house at the time of the arrest, Ms. Jackson and Ms. Kitchens, and that their testimony

would not have been favorable to petitioner. (S.H.Tr.:283).    The state court found that petitioner

had not shown prejudice based on counsel's failure to visit the crime scene given petitioner's trial

testimony, the presence of his clothes in the back bedroom, and the marijuana in plain view in the

bedroom, and the methamphetamine in plain view in the front room.   The state court further found

that counsel was not ineffective for failing to call the tenant, Ms. Jackson, or petitioner's friend, Mr.

Phillips, as witnesses.   Phillips was not present when the offense was called, and petitioner failed

to establish either that Jackson was willing to waive her Fifth Amendment privilege and testify, or

that she would have offered favorable testimony. (S.H.Tr.:277-78).

The state court's denial of these claims was not an unreasonable application of the *Strickland*

standard.   Complaints of uncalled witnesses are not favored in habeas corpus review because the

presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a

witness would have stated are largely speculative.   *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir.

2009).   To prevail on a claim based on counsel's failure to call a witness, the petitioner must name

the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Furthermore, if counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness."  *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Petitioner's trial counsel interviewed two potential witnesses to the crime for which petitioner was convicted and determined that their testimony would not have benefitted petitioner. He made the decision not to visit the crime scene and instead discuss the layout of the house with petitioner.  He cross-examined both police officers in detail. (R. 1:38-49, 63-71).  Petitioner has not shown any witness who was available and willing to testify at his trial and who would have presented testimony that would have benefitted his defense.  Similarly, given that the investigator's affidavit submitted by petitioner does not contradict the testimony given by the police officers, he has not shown that defense counsel's decision not to visit the crime scene and present evidence of the layout of the house at trial permeated his trial with obvious unfairness.  Petitioner also has failed to establish that, had counsel cross-examined the officers more effectively about the layout of the house, there is a reasonable probability that he would not have been convicted.

To the contrary, even without the testimony of the officers that petitioner was seen walking from the area where some of the drugs and the guns were located, there was evidence that the drugs

were in plain view in two rooms in the house, that petitioner had clothing in the house, that he received mail there, that he acknowledged that his fingerprints might be found on some of the drugs, and that he was overheard on the telephone talking about purchasing drugs.   Furthermore, petitioner's testimony about the circumstances of his arrest directly contradicted both officers' accounts.   His claims are without merit.

## B.   Deadly Weapon Finding

Petitioner further contends that his attorney was ineffective for failing to object that the trial judge did not have the jurisdiction to make an affirmative finding that a deadly weapon was used or exhibited, that the deadly weapon statute is unconstitutional, or that the finding was made in error. (Mem. at 19-22).   The state court found that counsel was not deficient in this regard because petitioner received proper notice, the finding did not increase his conviction or sentence, and it was proper under the law. (S.H.Tr.:276-77).

This denial is not an unreasonable application of *Strickland*.   This Court has already noted that the relevant statute is not unconstitutional and that the trial judge did not lack jurisdiction under state law to make the finding.   Trial counsel was not ineffective for failing to make these objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

As to petitioner's assertion that his attorney should have objected to the finding itself, counsel did argue that the finding was not warranted because the two guns were found in a house where two other adults resided and because there were no links between petitioner and the guns. The trial court found that petitioner had sufficient access to the guns to utilize them in commission of the offense. (R. 1:123-24).   The Court of Criminal Appeals has held that one can "use" a deadly

weapon without exhibiting it, such as when it is possessed by a drug dealer to protect the drug supply and cash. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). The trial court followed this state law in making the finding, and petitioner's trial attorney argued in opposition. Petitioner has not shown that counsel was ineffective for failing to argue this point further. These claims are therefore without merit.

**C.    Preservation of Error**

Finally, petitioner asserts that counsel was ineffective for failing to preserve error for appeal by objecting to false testimony from the officers. There is no evidence that the officers testified falsely. Counsel was not ineffective for failing to make a frivolous objection. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995). Petitioner's third ground for relief is without merit.

### VIII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his fifth ground for relief, petitioner alleges that appellate counsel was ineffective for failing to argue the claims he raises in his federal petition. (Mem. at 33).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address

18

the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

As noted, petitioner's claims are without merit.  Appellate counsel was therefore not ineffective for failing to raise them on appeal.  *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).  The state court's denial of this ground is not contrary to federal law, and petitioner's fifth ground for relief is without merit.

## IX.  EVIDENTIARY HEARING

Based upon review of the relevant filings and the state-court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 with respect to petitioner's conviction in Cause No. F06-64908 should be **DENIED** with prejudice, and the request for habeas relief with respect to Cause No. F06-64909 should be **DISMISSED** for lack of subject matter jurisdiction.

SIGNED on this 10th day of January, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE